UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RONNIE WADE,

                    Plaintiff,

      -against-                                1:13-CV-0623 (LEK/RFT)

CITY OF KINGSTON, *et al.*,

                    Defendants.

**MEMORANDUM-DECISION and ORDER**

## I.    INTRODUCTION

*Pro se* Plaintiff Ronnie Wade ("Plaintiff") alleges violation of his constitutional rights by Defendants City of Kingston; County of Ulster; Edward Brewster ("Brewster"); Timothy Matthews ("Matthews"); Robert Henry; John Turk; Shawn McDermott; Dirk Budd; Brian Robertson; and John Paulding (collectively, "Defendants"). Dkt. No. 1 ("Complaint"). Presently before the Court is Defendants' Motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. Nos. 25 ("Motion"); 25-4 ("Defendants' Memorandum"). For the following reasons, Defendants' Motion is denied.

## II.    BACKGROUND[1]

### A.  Plaintiff's Arrest

On March 4, 2009, Plaintiff was arrested by law enforcement members of the Ulster Regional Gang Enforcement Narcotics Team ("URGENT"). Dkt. No. 27 ("Plaintiff's Memorandum") at 1. The URGENT officers were working under the direct supervision of

---

[1] Because this case is before the Court on a motion for judgment on the pleadings, Plaintiff's allegations are accepted as true and form the basis of this section. See Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010).

Matthews, a Kingston Police Lieutenant.  Id.

Upon Plaintiff's arrest, URGENT members confiscated $1,985.00 from Plaintiff's wallet, as well as two cellular phones, a brief case, tools, and heating equipment from Plaintiff's vehicle.  Id.  Law enforcement also searched Plaintiff's home, pursuant to a search warrant, where an additional $2,000 was confiscated.  Id. at 2.  None of Plaintiff's property was inventoried, nor was he provided with any receipts or vouchers.  Id.  Plaintiff's personal property was then transferred to the custody of the Kingston Police Department ("Kingston P.D."), where it was allegedly placed in evidence lockers under the direct and exclusive control of Matthews.  Id.

**B. Article 78 Proceeding**

On November 18, 2011, in response to Plaintiff's Freedom of Information Law ("FOIL") request, the Ulster County District Attorney's Office ("Ulster County D.A.") provided Plaintiff with an asset forfeiture form, which itemized Plaintiff's personal property that had been confiscated, as well as the chain of custody.  See Pl.'s Mem. at 3.  On March 1, 2012, Plaintiff demanded the return of his personal property from the Ulster County D.A. but was informed that the Kingston P.D. had taken possession of the items.  Id.  Plaintiff served a demand on the Kingston P.D. for his personal property but received no response.  Id.

After the Kingston P.D. refused to return Plaintiff's personal property, Plaintiff filed an Article 78 petition in the nature of mandamus against Kingston and URGENT on or around April 26, 2012, in Ulster County Supreme Court.  Pl.'s Mem. at 5.  Plaintiff sought only the return of his property; he did not demand monetary relief or allege any constitutional violations.  Id.  The Kingston P.D. responded that it was neither in possession of Plaintiff's property, nor did it have any

knowledge of its whereabouts.² Id.

In a decision dated September 9, 2012, the Hon. Henry F. Zwack found that the Kingston P.D. and URGENT were required by law to return Plaintiff's property, and that Kingston failed to provide sufficient factual allegations that it neither possessed nor had knowledge of the status of Plaintiff's personal property. State Decision at 5; see also id. ("Kingston has carefully avoided addressing the question of whether Kingston ever took custody of petitioner's property, and if so, what became of the property.").

After obtaining the favorable decision, Plaintiff wrote a letter to the Kingston P.D. authorizing his wife to pick up his property;³ however, Plaintiff's wife was refused his property. Pl.'s Mem. at 6. The Kingston P.D. did not respond to Plaintiff's further correspondence to retrieve his property. Id. On September 16, 2013, without admitting fault, Kingston and URGENT stipulated to pay Plaintiff $2,285 as compensation for the loss of Plaintiff's personal property. Id.; see also Dkt. No. 27-1, Ex. G.

**C. The Complaint**

Plaintiff commenced this action on May 31, 2013, alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983. Compl. ¶ 1. Plaintiff alleges that Defendants' failure to enact or enforce written procedures or protocols for the handling and safekeeping of Plaintiff's personal property confiscated during his arrest, resulting in the loss of his personal property, denied Plaintiff his due process rights under the Fourteenth Amendment. Id. ¶¶ 74-105. Plaintiff seeks monetary

---

² URGENT did not answer or otherwise respond to Plaintiff's Article 78 petition. See Dkt. No. 25-3 ("State Decision") at 1.

³ At the time, Plaintiff was confined in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"). See Pl.'s Mem. at 6.

and declaratory relief. See id. For a complete statement of Plaintiff's claims, reference is made to the Complaint.

## III. LEGAL STANDARD

Rule 12(c) motions for judgment on the pleadings are decided under the same standard as Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief can be granted. Hayden, 594 F.3d at 160. Thus, "[t]o survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face,'" Graziano v. Pataki, 689 F.3d 110, 114 (2d Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)), when the complaint's factual allegations are taken as true and all reasonable inferences are drawn in a plaintiff's favor, Kirkendall v. Halliburton, Inc., 707 F.3d 173, 178 (2d Cir. 2013). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 570). Facial plausibility exists "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Additionally, the "tenet that a court must accept as true all of the allegations contained in an amended complaint is inapplicable to legal conclusions." Id.

## IV. DISCUSSION

Defendants move for judgment on the pleadings on the grounds that (1) Plaintiff could have sought money damages for civil rights violations in his Article 78 proceeding; (2) Plaintiff's claims are barred by the doctrine of collateral estoppel; and (3) the Court lacks subject matter jurisdiction because Plaintiff's claims are barred by the Rooker-Feldman doctrine. Defs.' Mem. at 2.

## A. Res Judicata[4]

The full faith and credit clause of the U.S. Constitution requires a federal court to give the same preclusive effect to a state court judgment as would be given in the state in which it was rendered. U.S. CONST. art. IV, § 1; see also Migra v. Warren City Sch. Dist., 465 U.S. 75, 81 (1984); 28 U.S.C. § 1738. "New York courts have adopted the 'transactional approach' to res judicata, holding that if claims arise out of the same 'factual grouping' they are deemed to be part of the same cause of action and the later claim will be barred without regard to whether it is based upon different legal theories or seeks different or additional relief." Davidson, 792 F.2d at 277-78. This bar is, however, subject to certain limitations, one of which is that it will not be applied if the initial forum did not have the power to award the full measure of relief sought in the later litigation. Heimbach v. Chu, 744 F.2d 11, 14 (2d Cir. 1984).

Under New York Civil Practice Law and Rules § 7806, damages can be awarded in an Article 78 proceeding only if (1) the damages are "incidental to the primary relief sought" and (2) "the relief must be such as [the petitioner could have recovered] on the same set of facts in a separate action or proceeding suable in the supreme court against the same body or officer in its or his official capacity." Defendants argue that Plaintiff's claims for money damages for civil rights violations are barred because they could have been brought in state court in the Article 78 proceeding as incidental to the primary relief sought. Defs.' Mem. at 4-10.

The Second Circuit addressed this precise issue in Davidson, 792 F.2d 275. In that case, the

---

[4] Although Defendants do not explicitly reference "res judicata," their argument that Plaintiff's claims are barred because he could have sought damages in his Article 78 petition is in essence a res judicata argument, and will be construed as such. See Davidson v. Capuano, 792 F.2d 275, 277-80 (2d Cir. 1986) (addressing defendants' argument that plaintiff could have sought money damages in his Article 78 proceeding through a res judicata analysis).

plaintiff commenced an Article 78 action for return of his personal property. Id. at 276. The plaintiff prevailed in the Article 78 proceeding and then commenced a civil rights action in federal court seeking money damages. Id. at 278. The court acknowledged that the "Article 78 proceeding and the present civil rights action undoubtedly are based on the same cause of action." Id. However, "although New York courts have not fully articulated a comprehensive test for determining when an Article 78 proceeding can be properly characterized as incidental to the primary relief sought, substantial New York authority does indicate that *damages for civil rights violations are not included in this category*." Id. (citing cases) (emphasis added). Accordingly, the court held that "the damages [plaintiff] seeks in this civil rights case cannot be characterized as incidental to the primary relief sought in his . . . article 78 proceeding." Id. at 279.

Defendants argue, in wholly conclusory terms, that Davidson is distinguishable from this case. Defs.' Mem. at 7. However, Davidson is virtually identical to the present case. In both cases, the plaintiffs filed Article 78 petitions for the return of their personal property, prevailed in their state actions, and then commenced federal civil rights actions for money damages based on the same set of facts. See Davidson, 792 F.2d at 276. Defendants have failed to provide any legal or factual support as to why the Court should not follow Davidson.

Instead, Defendants argue that the Court should follow the decisions of DiRose v. O'Connor, 25 F. Supp. 2d 138 (W.D.N.Y. 1998) and Hasenstab v. City of New York, 664 F. Supp. 95 (S.D.N.Y. 1987). Defs.' Mem. at 7-9. In each of those cases, the plaintiffs filed Article 78 petitions and were subsequently barred from pursuing civil rights actions in federal court. DiRose, 25 F. Supp. 2d at 140; Hasenstab, 664 F. Supp. at 95. However, both of those cases are distinguishable on pertinent grounds from the present case. In both DiRose and Hasenstab, the plaintiffs *lost* their

6

Article 78 proceedings and then commenced identical actions in federal court. DiRose, 25 F. Supp. 2d at 140; Hasenstab, 664 F. Supp. at 95. Importantly, the DiRose court emphasized that its decision was based on the fact that the plaintiff had lost his state court claim, and noted that its holding was not inconsistent with Davidson. DiRose, 25 F. Supp. 2d at 140 ("Plaintiff's case is, therefore, distinguished from Davidson, in that Davidson secured a victory in state court and sought merely to extend the amount of relief available to him for that victory, whereas, [p]laintiff has lost on the merits in state court and seeks now to relitigate the merits in federal court.").

Here, Plaintiff prevailed in his Article 78 state court proceeding, and on that ground alone this case is distinguishable from DiRose and Hasenstab. As stated *supra*, the facts in this case are nearly identical to those in Davidson, and thus the Court follows its holding. Therefore, the Court rejects Defendants' argument that Plaintiff is barred from seeking money damages in this action because he could have sought monetary relief in the Article 78 proceeding.

**B. Collateral Estoppel**

Collateral estoppel is applicable if (1) there has been a final determination on the merits of the issue sought to be precluded; (2) the party against whom preclusion is sought had a full and fair opportunity to contest the decision; and (3) the issue sought to be precluded by the earlier suit is the same issue involved in the later action. Davis v. Halpern, 813 F.2d 37, 39 (2d Cir. 1987) (citation omitted).

Defendants argue that Plaintiff's claims are barred by the doctrine of collateral estoppel because Plaintiff's due process claim was at issue and already decided in his Article 78 proceeding. Defs.' Mem. at 11-13. In sole support, Defendants cite a passage in the State Decision in which Judge Zwack wrote:

7

> Turning to the question of whether the decision regarding whether to return the confiscated property is discretionary or ministerial, the [c]ourt notes that governmental entities may seize and hold a citizen's property in connection with a criminal investigation or prosecution, but due process ordinarily requires the government to return the confiscated property to its owner once those proceedings have terminated. . . .

Id. at 9; see also State Decision at 3.

Defendants' argument that Plaintiff is collaterally estopped from raising a due process claim based on this excerpt is entirely without merit. The Article 78 was merely a summary proceeding in which the sole relief sought was the return of Plaintiff's personal property. See State Decision at 2. Neither party raised any due process arguments in their submissions. See id. Moreover, as stated *supra,* Plaintiff's due process claim now before the Court is a separate issue from his demand for return of his personal property in the state court action. See Davidson, 792 F.2d at 276 (citing Leisner v. Bahou, 469 N.Y.S.2d 255, 258-59 (App. Div. 1983) for the principle that a civil rights action for damages following an underlying Article 78 petition is an independent cause of action). Furthermore, the passage cited above is the sole instance in which Judge Zwack mentions due process in his decision. Id. This singular reference to due process, in the context of a decision on whether the Kingston P.D. and URGENT were required to return Plaintiff's personal property,[5] does not constitute a final determination on the merits of Plaintiff's due process claim now before the Court. Thus, the Court rejects Defendants' argument that Plaintiff's due process claims are barred by the doctrine of collateral estoppel.

### C. Rooker-Feldman Doctrine

Under the Rooker-Feldman doctrine, only the United States Supreme court may review a

---

[5] Judge Zwack was addressing only the narrow issue of whether Kingston's duty to return Plaintiff's property was discretionary or ministerial. State Decision at 3.

final decision of a state court, and thus "federal district courts do not have jurisdiction over claims that have already been decided, or that are 'inextricably intertwined' with issues that have already been decided, by a state court." Bridgewater Operating Corp. v. Feldstein, 346 F.3d 27, 29 (2d Cir. 2003).

Defendants argue that Plaintiff's due process claims are barred under this doctrine because they are "inextricably intertwined" with the issues raised in the Article 78 proceeding. Defs.' Mem. at 14-15. In support, Defendants rely on Bridgewater, where the plaintiffs were awarded possession of property in state court, but were barred from seeking money damages from the same incident in federal court under the Rooker-Feldamn doctrine. Bridgewater, 346 F.3d at 29-30.

However, Bridgewater is distinguishable in two important ways. First, Bridgewater was brought following a series of substantive state court civil actions, which were fully decided on their merits. Id. at 28-29. In contrast, this case involves an underlying Article 78 proceeding, which is merely a "special proceeding" "designed to facilitate a 'summary disposition' of the issues presented." Davidson, 792 F.2d at 280; see also id. (noting that an Article 78 is a particular type of litigating a case "that differs from a civil action in several ways"). Second, as stated *supra*, although this action is based on the same set of facts and circumstances as the previous Article 78 petition, Second Circuit authority is clear that subsequent due process claims constitute an independent cause of action. See Davidson, 792 F.2d at 278-89. Furthermore, the Rooker-Feldman doctrine establishes "the clear principle that federal district courts lack jurisdiction over suits that are, in substance, *appeals* from state-court judgments. . . ." Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005). Here, Plaintiff is not appealing a state court judgment, but rather seeking to extend relief previously granted. Therefore, Bridgewater is inapplicable to this case, and

Plaintiff's due process claims are not barred by the Rooker-Feldman doctrine.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 25) for judgment on the pleadings is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: September 30, 2014
Albany, NY

Lawrence E. Kahn
U.S. District Judge